Rabin, J.
The issue is whether a pension may be revoked by a private employer when facts are discovered after an employee’s retirement which would have been grounds for discharge for cause had they been known during employment, where the pension plan is.silent on the point.
The undisputed facts are as follows. Plaintiff-respondent Gerald R. Hadden (Hadden) entered the employ of defendant-appellant Consolidated Edison Company of New York, Incorporated (“ Con Edison ” or “ Company ”) in 1931. By June, 1966, he had risen to the position of vice-president in charge of construction. In December, 1967, Hadden participated in a meeting with a prominent political leader and a Con Edison contractor. At this meeting it was suggested that in return for a bribe to the appropriate New York City official, Con Edison could obtain a valuable license necessary for the construction of a power transmission line. Late in December, 1967, or early January, 1968, Con Edison’s chairman of the board, Charles F. Luce (Luce), first became aware of Hadden’s participation at this meeting. Luce discussed the meeting with Hadden on two occasions and informed Hadden that if he did not retire, he would be discharged for having concealed the bribe-approach from his superiors. Hadden filed a written election pursuant to the “ Early Optional Retirement ” provision of the “ Pension Plan for Retirement for Age ” (hereinafter “ Pension Plan ” or “ Plan ”), retired, and began receiving pension payments in February, 1968.[1]
*92 In November, 1969, Hadden testified under grant of immunity at the Federal criminal trial of one of the other participants at the December, 1967 meeting. Hadden admitted, inter alia, that he accepted cash totaling $15,000 from one of Con Edison’s contractors during the course of 1967, that in 1966 he accepted a merchandise certificate in the amount of $1,000 from the same contractor, and that he secured financial gains as a result of dealings with other contractors of Con Edison. Luce obtained a transcript of Hadden’s testimony, and upon his recommendation the board of trustees subsequently passed resolutions authorizing the termination of Hadden’s pension.[2] As of December, 1969, Con Edison refused to make any further pension payments.
Hadden thereupon brought this suit for damages and to compel Con Edison to resume payment of his pension benefits. The Company’s answer contained a general denial, affirmative defenses, and counterclaims. Both parties moved for summary judgment; each was partially successful. Con Edison was ordered to reinstate Hadden on its pension rolls with all attendant benefits, and Hadden was ordered to pay the Company $16,000 representing moneys and a gift certificate he had improperly received from a Company contractor. Issues of fact requiring trial were found with regard to Con Edison’s claim for an additional $15,750 obtained by Hadden as a result of stock dealings with a Company contractor. The court dismissed Con Edison’s claim that Hadden’s conduct, forfeited his right to retain compensation for the last 17 months of his employment, *93 and that this amount, totaling $68,250, should be offset against any award to Hadden. The Appellate Division affirmed without opinion, and by permission of this court granted February 7, 1973 Con Edison appeals from that portion of the Appellate Division order which affirmed summary judgment ordering Hadden’s reinstatement and payment of denied benefits. We do not consider the other aspects of the order.
In support of its termination of Hadden’s benefits, Con Edison advances three arguments: (1) the board’s action whs authorized under the Pension Plan; (2) Hadden’s misconduct constituted a “failure of consideration”; and (3) Hadden’s failure to disclose material facts concerning his involvement when questioned by Luce prior to retirement, entitles the Company to rescind its agreement to allow Hadden to retire rather than discharge him.
Of course, in reviewing a grant of summary judgment, we question whether a material, triable issue of fact is presented. For reasons which follow, we reject the first and second arguments above as a matter of law, and these present no factual issue. However, factual issues underlying the third argument defeat the grant of summary judgment. If true, the allegation that Hadden materially and fraudulently misrepresented his involvement in the preretirement discussions with Luce would warrant rescission of the parties’ agreement that Hadden’s retirement would be a mutually satisfactory resolution under the circumstances. Hadden denies this allegation, presenting a material issue of fact for jury determination.
Both parties properly agree that for the Company’s action to be lawful, it must be authorized in some manner by the pension contract (Gitelson v. Du Pont, 17 N Y 2d 46; see Fernekes v. CMP Ind., 13 N Y 2d 217, 220).[3]
On the first question of authorization, Con Edison concedes that there is no express provision in the Pension Plan authorizing the termination of benefits after retirement. However, the Company does cite a provision declaring that those discharged *94 for cause will not be entitled to pension rights,[4] and a provision declaring that the board of trustees may interpret the Plan, define its application, and make rules and regulations for its administration.[5] Beading these provisions together, Con Edison argues that the board’s resolution was a proper exercise, of its interpretive power since “ To have decided differently would have been to conclude that the draftsmen intended to pay benefits to the employee who stole money every week only if he managed to conceal it up to the day of retirement ”. However, the section purportedly granting authority to the board, besides referring to the board’s power as “ interpretation ”, specifically limits this power in that “ no rule, regulation, interpretation or action shall be inconsistent with any provisions of the Plan.” In examining the Plan to determine consistency, we find another provision which reserves the right to Con Edison to “ amend, modify or terminate in whole or in part the Plan * * * upon six (6) months’notice to its then employees * * * No such amendment or modification shall retroactively affect adversely employees’ benefits under the Plan.” (§ X, subd. [A], Bight to Terminate or Modify.)
The board’s action, though denominated “ interpretation ”, constitutes a sufficiently drastic wrenching of the Pension Plan, which contains no provision authorizing postretirement termination, that it more closely resembles a modification or amendment (see 3 Corbin, Contracts, § 534, p. 11; see, generally, People ex rel. Twenty-Third St. R. R. Co. v. Commissioners of Taxes, 95 N. Y. 554, 559; Matter of Adams, 3 Misc 2d 12, 14; Matter of Burri v. Kern, 180 Misc. 74). The board did not give the required six months’ notice for a modification; and, more *95 significant, the board’s action is a modification which retroactively affects employees’ benefits under the Plan and is therefore unauthorized under the provision governing modifications. Even assuming the board’s action could be viewed as an “ interpretation ’ ’ of the Plan rather than, as is apparent, a modification or amendment, it would be inconsistent with the above provision clearly requiring that even these more drastic changes cannot retroactively affect employees’ benefits. A fair reading of the contract suggests that what cannot be done by modification and amendment cannot be done by “ interpretation ”. However viewed, the board’s action is unauthorized by the Pension Plan.
Con Edison’s second argument, that Hadden’s misconduct constitutes a “ failure of consideration ” excusing its payment of pension benefits, is also unpersuasive. As utilized by Con Edison, the claim of “ failure of consideration ” charges Had-den with a breach of performance under the Pension Plan contract.[6] However, Con Edison is unable to cite to a provision in the Plan imposing any condition upon the payment of the pension other than age, length of service, and absence of discharge for cause. The provision under which Hadden retired unequivocally states than employee who attains the proper proportions of age and accredited service[7] “ shall, upon filing a written election * * * be retired * * * from the service of the Company.” Such wording indicates that retirement under the provision is at the employee’s option once the age and service requirements are met. (Accord Spencer v. Bullock, 216 F. 2d 54, 55.) Other than the proviso that the Pension Plan shall not be available to an employee who has been discharged or released for cause, there is no other qualification upon the right of a retired employee who has met the age and service criteria to receive pension benefits.[8]
*96 While there is no language in the Plan expressly conditioning pension payments upon the employee’s performing honestly and loyally, there is little difficulty in regarding these qualifications as a constructive condition of Con Edison’s duty of performing its promise to make pension payments. (See, e.g., Baltimore County Bd. of Trustees of Employees’ Retirement System v. Comes, 247 Md. 182; Van Coppenolle v. City of Detroit, 313 Mich. 580; Fromm v. Board of Directors, 81 N. J. Super. 138.) However, constructive conditions are imposed by law to meet the ends of justice (3A Corbin, Contracts, § 653; Restatement, 2d, Contracts, Tentative Drafts No. 1-7, § 255), and it is not everybreach of a constructive obligation which will excuse the other party from rendering its performance under the contract. (See Jacob & Youngs v. Kent, 230 N. Y. 239; Restatement, Contracts, §§ 274—275.)
If the party in default has substantially performed, the other party’s performance is not excused. (See Van Iderstine Co. v. Barnet Leather Co., 242 N. Y. 425, 434; Spence v. Ham, 163 N. Y. 220.) This doctrine, familiar in construction contract situations, is not limited to that area, but applies to employment contracts as well. (3A Corbin, Contracts, § 675, at p. 208, § 701, at p. 312; see Blitz v. Toovey, 9 N. Y. S. 439; cf. Hosley v. Black, 28 N. Y. 438, 443; Hong v. Independent School Dist., 181 Minn. 309.) There is no simple test for determining whether substantial performance has been rendered and several factors must be considered, including the ratio of the performance already rendered to that unperformed, the quantitative character of the default, the degree to which the purpose behind 'the contract has been frustrated, the willfulness of the default, and the extent to which the aggrieved party has already received the substantial benefit of the promised performance. (See 3A Corbin, Contracts, §§ 704-707; 6 Williston, Contracts, §§ 841-844 [3d ed.].)
It is now recognized that a pension is not a pure gratuity, but rather a deferred portion of the compensation earned for services rendered. (See Delaware Trust Co. v. Delaware Trust Co., 43 Del. Ch. 186; Sonnabend v. Spokane, 53 Wn. 2d 362; 44 N. Y. Jur., Pensions and Retirement Systems, § 1, at p. 256.) The consideration supporting the employer’s promise to pay retirement pensions is the employee’s forbearance from resigning and continued work over a period of years (see 1 Corbin. *97 Contracts, § 135; 1A Corbin, § 192). In the present case, Had-den’s consideration supporting Con Edison’s promise to pay pension benefits is Ms 37 years of continued service.
The question we must consider therefore is whether, in light of the factors mentioned above, Hadden’s misconduct in the latter years of Ms employment sufficiently undermines the value of his 37 years of service with the Company, so as to excuse Con Edison from paying him pension benefits.
Weighing the factors involved we find that Hadden’s performance has been substantial. Con Edison has received the benefit of his 37 years of employment, and to excuse its obligation to pay pension benefits at this point, on the basis of a breach of constructive condition, would create both forfeiture and unjust enrichment. The value of Hadden’s performance to Con Edison over the course of nearly four decades is not substantially impaired by his disloyalty in some of those later years. In so stating, we do not condone his actions or disregard the fact that his breach was willful.[9] We say merely that an analysis of the various factors involved leads to the conclusion that despite Hadden’s financial dealings with contractors, Con Edison obtained substantially what it had bargained for in *98 offering a Pension Plan — long and continuous employment. In placing Hadden on its pension rolls, the Company ip effect acknowledged that it had received the performance required and that its obligation to pay the previously deferred compensation was now absolute.
While the Company may well have been entitled to discharge Hadden before his retirement, and thus force a loss of his expected pension, this result follows not because of “ failure of consideration ” but because the Pension Plan expressly conditions pension benefits on the absence of discharge for cause.
The fact that Hadden was never discharged distinguishes this case from Gitelson v. Du Pont (17 N Y 2d 46, supra). The pension plan there construed provided that employees discharged for “ dishonesty ” forfeited rights under the retirement fund (p. 48). At issue in Gitelson was whether the board which administered the retirement fund had properly determined that the basis of Gitelson’s discharge was “ dishonesty ”. Since this plan contains no such “ dishonesty ” provision, and it is conceded Hadden was never discharged, our decision supporting the withholding of pension benefits in Gitelson offers no support to Con Edison’s argument. Instead, the Gitelson holding tends to reinforce the basic premise: If the parties to the Pension Plan herein wanted pension benefits to be adversely affected when an employee’s misconduct comes to light after his retirement, rules governing the Company’s and the employee ’s rights in such a situation should properly have been covered by provisions in the Plan.
We do find merit, however, in Con Edison’s final contention that it should be permitted to rescind the agreement whereby it waived its right to discharge Hadden, if it is established that the waiver was induced by Hadden’s fraudulent misrepresentations.
It is conceded that late in December, 1967, or early in January, 1968, Luce became aware that Hadden was present at the meeting concerning the bribe-approach. Luce discussed the matter with Hadden on January 6, 1968, and again, with Hadden’s counsel present, on January 26, 1968.
Both parties agree that Luce was aware at the time of these discussions of Hadden’s presence at the above meeting at which the subject of bribery was explored. Beyond this initial agree *99 ment, however, dual versions develop. Con Edison claims that Luce knew only of this meeting, and that had he been aware of Hadden’s more extensive involvement, Luce would have discharged him. The Luce affidavits claim that Con Edison’s decision to allow plaintiff to retire rather than to discharge him, was based on Hadden’s specific denials of further involvement. Both Hadden and his counsel, who was present at the January 26 meeting, deny that Luce’s recommendation for early retirement, rather than discharge, was predicated upon any reliance that the full extent of Hadden’s involvement was known. Bather, plaintiff suggests that the “ retirement-versus-discharge ” decision was based on Hadden’s assurance that he would co-operate fully with the authorities.
A distillation of the record for facts upon which the parties agree produces three significant points: (1) Luce was aware of Hadden’s involvement with the conspiracy to some extent ; (2) Hadden was offered a choice between accepting early retirement and being discharged with loss of all pension rights; and (3) Hadden accepted and was granted early retirement. Unresolved by the present record, however, are the exact conditions of this apparent offer and acceptance. Luce could have discharged Hadden before his retirement. If he were properly discharged at that time, Hadden would have lost his pension rights pursuant to the Pension Plan. To induce Luce’s agreement to forbear the exercise of this right to discharge, Hadden may or may not have offered certain assurances. During the negotiation, he may or may not have misrepresented material facts with regard to the full extent of his involvement in the conspiracy.
Depending upon the nature of the agreement and the nature of Hadden’s representations, if any, the defendant Con Edison may be entitled to rescind its agreement to waive its right to discharge Hadden before he exercised his retirement option and thereby to legitimately terminate the plaintiff’s pension payments (cf., e.g., Adams v. Gillig, 199 N. Y. 314). Of course, it may also have been that Con Edison waived its right to discharge Hadden under circumstances sufficient to thwart its later claim of rescission. (See, e.g., New York Tel. Co. v. Jamestown Tel. Corp., 282 N. Y. 365, 372-373.) In either case, issues of *100 fact are presented. (Cf. 422 W. 15th St. v. Estate of Johnson, 258 App. Div. 227.)
This conclusion, that fraudulent misrepresentation is a good defense, does not flow ipso facto from the discovery of dishonesty postretirement, or from plaintiff’s bare concealment of this dishonesty, but rather from the intimate connection between the facts surrounding plaintiff’s retirement and the postretirement discoveries. (Cf. Gitelson v. Du Pont, 17 N Y 2d 46, 50, supra.) We do not have before us a case in which an employer, prodded by his employee’s pending retirement, makes routine inquiries concerning the employee’s loyalty and stewardship, and later relies on the responses to claim rescission. In the case at bar, the preretirement discussions between Luce and Hadden touched upon the same subject matter, and at'least some of the same underlying facts, as formed the basis of the postretirement revocation.
This casé appears before us on appeal from a grant of summary judgment, and accordingly, since there are unresolved factual issues, we reverse and deny summary judgment. Specifically, we remand for resolution of the following issue: Was Con Edison’s waiver of its right to discharge Hadden before his retirement, knowingly induced by Hadden through material misrepresentation?
The portion of the Appellate Division order appealed from is reversed and the matter remitted to the Supreme Court for further proceedings in accordance with this opinion.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones and Wachtler concur; Judge Stevens taking no part.
Order reversed, with costs to the ultimately prevailing party to abide the event, and case remitted to Supreme Court, New York County, for further proceedings in accordance with the opinion herein.

. Section II of the Pension Plan provides: “ (C) Early Optional Retirement. Any employee who shall have attained the age of fifty (50) or more years and who shall have completed such years of accredited service which when added to his years of age shall total not less than eighty (80) shall, upon filing a written election, be retired from the service of the Company. Such election shall not be revocable after the date of such employee’s retirement.”

. The full text of the resolutions passed by the board of trustees is as follows: “RESOLVED, That in the exercise of its authority and responsibility under the Company’s Pension Plan for Retirement for Age as set forth in Article VII thereof, the Board of Trustees hereby interprets the Plan as providing that the Company has the right to suspend and terminate pension payments to a former officer when it becomes aware, following the termination of his employment, of facts which if known to it prior to such termination would have resulted in a termination by the Company for cause and a consequent loss of pension rights by the officer in question; and it was further RESOLVED, That the Board of Trustees is of the view that the case of Mr. Gerald R. Hadden is such a case as is described in the preceding resolution and therefore directs that no further payments be made to Mr. Hadden pursuant to the Company’s Pension Plan for Retirement for Age.”

. The interpretation of such documents as pension plans, as matters of law, aro properly reviewable by this court (Gitelson v. Du Pont, 17 N Y 2d 46, 48; see Cohen and Karger, Powers of the New York Court of Appeals, pp. 461—462).

. Section IX, Right to Employment or Benefits, provides in pertinent part: “ Ho provision of the Plan shall apply or be available at any time to any employee who shall have resigned, been laid off or who has been or is at any time discharged or released for cause by the Company.”

. Section VII of the Pension Plan, pursuant to which the board of trustees purported to act, reads in pertinent part as follows: “ (A) Rules and Regulations. The Company through its Board of Trustees shall have the sole responsibility for and sole control of the operation and administration of the Plan * * * shall interpret its meaning and define its application, and shall have power generally to take such action and do such things as may be necessary to carry out its provisions; provided, however, that no rule, regulation, interpretation or action shall be inconsistent with any provisions of the Plan.”

. “ Failure of consideration is a generic expression covering every case where an exchange of values is to be made and the exchange does not take place, either because of the fault of a party or without his fault.” (Restatement, Contracts, § 274, Comment a.)

. “Years of accredited service” under the Plan is defined solely with regard to concepts of length of time and without mention of any other qualifications necessary for service to be “ accredited ”. (§ IV, Conditions Relating to Benefits.)

. Unlike some other pension plans, the Plan in question here has no statement requiring “faithful” or “loyal” service. (See, e.g., Bucher v. Ober, 204 Md. 568.)

. In' deciding controversies in the field of - construction contracts, it has freqüently been said that a “willful” breach defeats a claim of substantial performance. (See, e.g., Jacob & Youngs v. Kent, 230 N. Y. 239, 244 [dictum]; D’Amato v. Gentile, 54 App. Div. 625, affd. 173 N. Y. 596.) Our treating willfulness here as one of several factors to. be considered in determining whether Hadden’s performance is substantial does not compel a different result in those Cases. Weighing willfulness as one of several relevant factors is also supported by authority. (Cf. Melgar Corp. v. Warner’s Features, 222 N. Y. 449, 454; 3A Corbin, Contracts, § 707.) Since employment contracts are divisible, the situation presented by an employee’s breach in some, but not all, of the years of his employment relationship is somewhat analogous to the problem encountered in installment contracts where there has been a material breach with regard to one of the installments. (See Melgar, supra.) In such an event,, the obligee is entitled to reject that installment. But whether or not he may treat the breach as a total breach of the entire contract excusing him entirely from his own performance depends upon whether the breach with regard to the installment substantially impairs the value of the entire contract. (Uniform Commercial Code, § 2-612, subds. [2], [3].) In the present case, while Hadden’s willful misconduct, may have been a material breach with regard to a specific term of his employment, it does not impair the value of his nearly four decades of work for the Company.