OPINION OF THE COURT
Bernard Fuchs, J.
Plaintiff was employed as a commission salesman by Gemco Textiles, Inc., for 10 years until his resignation on May 28, 1976. At about that time plaintiff demanded his termination distribution under Gemco’s profit-sharing plan but was refused. The following month he accepted employment as a salesman with one of Gemco’s competitors.
The termination of plaintiff’s employment with Gemco arose from an accumulation of grievances. Gemco had undertaken to charge plaintiff with the employer’s share of F. I. C. A. payroll taxes, retroactive for two years and Gemco withheld that sum. Shipments to accounts sold by plaintiff were credited to the "house” with consequent denial of commissions to plaintiff.
Eventually plaintiff sued to recover the excess withholding of payroll taxes and obtained a payment by compromise settlement. The present action, which was tried to the court, is to recover his vested interest in the profit-sharing plan. One defense is that plaintiff forfeited that interest by accepting employment with Gemco’s competitor. In the alternative defendant administrator asserts that he has discretion under the plan, to withhold payment until plaintiff reaches age 60, specified in the plan as the "normal retirement date.” The administrator alone is hereinafter referred to as "defendant” because the trustee is a nominal party prepared to follow his instructions.
The plan became effective July 1, 1971. Gemco regularly delivered to each participant in the plan defendant’s annual "participant’s account statement” indicating the balance with which the participant was credited. As of July 1, 1975 plaintiff was credited with $6,691.48. The statement like those of the preceding years included the following language. "In the event you terminate your employment with the Company other than for retirement, death and/or disability, you are entitled to receive 60% of the above total as a termination distribution under the vesting provisions of the Plan.”
Gemco had for years refused to increase plaintiff’s "draw” notwithstanding the advance of price inflation. Plaintiff was *940 given to understand that his participation in the profit sharing plan despite a lack of executive standing was compensation for Gemco’s disinclination to pay him at contemporary levels. And in further reliance on these benefits, plaintiff performed office work which was not part of his regular duties as a salesman.
The defense of forfeiture is based on section 8.3 of the plan. That section imposes the forfeiture upon a plan participant who "[pjerforms services for a competitor of the Employer” within two years after termination of his employment. The cited provision, however, takes no account of gross unfairness by the employer to the participant in the circumstances surrounding termination of the employment.
In the present case, Gemco baldly appropriated from its employee of 10 years’ standing a sum equal to the employer’s share of F. I. C. A. payroll taxes, retroactive for two years. And this imposition was aggravated by a further appropriation of his earned commissions against a background of ungenerous compensation policies. No self respecting employee so deeply and repeatedly overreached could persist in his employment.
Section 8.3 of the plan was intended to provide Gemco with a degree of employee loyalty well beyond Gemco’s legal entitlement. For plaintiff had no obligation to abstain from competitive employment after he left Gemco. (Purchasing Assoc. v Weitz, 13 NY2d 267.)
Plaintiff’s unavoidable resignation after 10 years in one employment and perhaps more in the same industry left him no choice but to seek a livelihood from the work he knew. His resignation was so provoked as to constitute an abusive, arbitrary dismissal. The forfeiture provisions of section 8.3 are subject to a constructive condition that the employee’s conduct relied upon for their operation was not precipitated by gross impositions of the employer. That condition, which was certainly not satisfied in the present case, is imposed by law to meet the ends of justice. (See Hadden v Consolidated Edison Co., 34 NY2d 88.)
The forfeiture defense is, moreover, denied to defendant by the Employee Retirement Income Security Act (ERISA) (US Code, tit 29, § 1001 et seq.). By virtue of section 1053 of that statute, as explained in United States Code Congressional & Administrative News (1974, vol 3, p 4726): "a vested benefit is not to be forfeited because the employee later went to work for a competitor”.
*941 Section 1053 took effect on January 1, 1976 (US Code, tit 29, § 1061; Ellis v Lionikis, 152 NJ Super 321). This was well before plaintiff changed jobs and before the claimed forfeiture. Defendant argues, however, that vesting standards under ERISA do not apply to a plan in existence (as this one was) on January 1, 1974 until the first plan year beginning after December 31, 1975 and that as to defendant’s plan, the latter year began July 1, 1976 (after the claimed forfeiture).
No evidence of the plan year was introduced at trial. Defendant’s mere assertion that the plan maintained a July 1 to June 30 fiscal year is insufficient to support his argument. There is, therefore, no reason to consider section 1053 inapplicable to the present case. (See Riley v Meba Pension Trust, 570 F2d 406, 411.)
Even if section 1053 were literally inapplicable because the claimed forfeiture occurred some three weeks before the plan’s next fiscal year, as defendant argues, it would be necessary to consider the validity of such a forfeiture clause as a matter of public policy. Although such provisons have been sustained in the past (Kristt v Whelan, 4 AD2d 195, affd 5 NY2d 807) the strong Federal policy announced by ERISA should be taken to supersede earlier authorities. (Ellis v Lionikis, supra.) At the very least in such a case, "ERISA creates a presumption of unreasonableness in forfeiture provisions and places the burden of proof on those who wish to apply them.” (Amory v Boyden Assoc., 434 F Supp 671, 673.) Defendant has not sustained that burden.
The evidence is conflicting as to whether plaintiff ever received a copy of the profit sharing plan (setting forth the forfeiture and other provisions on which defendant relies) before this action was begun. There is no doubt, however, that plaintiff received a participant’s account statement each year of the plan except 1976 when he resigned. It is stipulated that plaintiff’s interest was 60% vested.
Defendant’s authority under section 8.2 of the plan to withhold payment until plaintiff reaches age 60 must be compared with the language quoted above, of defendant’s participant’s account statement. That language is an unequivocal promise that plaintiff is "entitled to receive” his vested interest in the account upon his termination of employment. There is no ambiguity or uncertainty here for defendant to resolve pursuant to that authority of the administrator under section 10.3 of the plan. But there is a contradiction between *942 defendant’s unqualified promise to pay on termination and defendant’s claimed discretion to withhold payment until age 60.
Defendant argues that this conflict must be resolved by an exercise of his section 10.3 authority. The present case, however, offers no occasion for such action. To withhold payment in the face of unequivocal promises to pay which defendant set before plaintiff each year and which Gemco (of which defendant is also president) used to induce compliance with its employer demands would constitute a gross abuse of defendant’s decision making authority.
Contradictory provisions of the same instrument or plan must be construed against the party advancing them. (Consolidated Gas Supply Corp. v Matula, 42 AD2d 656, affd 36 NY2d 790; Davilla v Court Employment Project, 86 Misc 2d 552. (Slavin, J.); 10 NY Jur, Contracts, § 223.) Especially is this clear in the present case where plaintiff relied on one of the contradictory provisions which was repeated to him each year by defendant and defendant now asserts to plaintiff’s detriment the other provision which was displayed to plaintiff at most once, seven years ago, surrounded by pages of obscure legalistic verbiage.
Judgment for plaintiff in an amount equal to 60% of his profit sharing account as it stood on May 28, 1976 with interest from that date and costs of the action.
Settle judgment.