OPINION OF THE COURT
Frank S. Rossetti, J.
Claimant’s motion for summary judgment is denied and defendant’s cross motion for summary judgment is granted and the claim is dismissed, in accordance with the following.
*1045 The subject contract claim is for retirement benefits allegedly due claimant from the New York State Employees’ Retirement System (System; see, n 1, supra). The relevant facts are essentially undisputed.
On November 18, 1971 Charles Kutas was hired by the State Department of Motor Vehicles (Department) as a clerk. He was then 73 years of age, having been born October 23, 1898. However, in applying for this job, he misrepresented his age to the Department as only 57 because he believed (correctly) that he would not be hired if the State knew he was over 70. He repeated this misrepresentation when he applied for membership in the System on November 24, 1971, which membership began November 18, 1971, the date of his employment with the State.
Claimant worked for the Department 10 years and on October 22, 1981 he applied to the System for retirement benefits. He included a birth certificate with his application and it showed his true birth date. By letter dated January 22, 1982, the System notified claimant that no retirement benefits would be paid because at his age retirement would have been mandatory as soon as he joined the System and no benefit would then have been payable. Claimant requested a State Comptroller’s hearing to redetermine his application, under section 74 of the Retirement and Social Security Law, and this hearing was held February 9, 1984. On March 1, 1985 claimant received the Comptroller’s determination that no benefit was payable. Claimant served a notice of intention on the State and filed it with this court August 12, 1985. The subject claim was served and filed March 24, 1986.
Contemporaneously, claimant commenced two actions in Supreme Court. The first (commenced June 24, 1985 in Albany County) was a CPLR article 78 proceeding for review of the Comptroller’s determination and an award of pension benefits. (See, Retirement and Social Security Law § 74 [d].) The second (commenced July 3, 1985 in New York County) was a declaratory judgment action (see, CPLR 3001) to declare subdivision (d) of Retirement and Social Security Law § 74 unconstitutional and claimant’s right to a pension a contractual one enforceable in the Court of Claims. This latter action was dismissed March 4, 1986 in a decision which did not find said subdivision (d) unconstitutional, but left to the Court of Claims the determination of whether claimant had a contractual cause of action enforceable here. (See, Kutas v New York *1046 State Employees’ Retirement Sys., Sup Ct, NY County, Mar. 4, 1986, Wilk, J.) Claimant appealed the dismissal, but has not perfected the appeal, ostensibly pending a determination here. The other, article 78 proceeding, which was allegedly stayed pending the declaratory judgment action, is apparently still pending.
In his claim in this court, Mr. Kutas’ basic contention is that his right to a pension is a contractual one by reason of the State Constitution and he is therefore entitled to a recovery in this court, either under the terms of his pension contract, as set forth in the Retirement and Social Security Law (his first cause of action), or in quantum meruit (his second and only other cause of action). The State answers that recovery in this court is barred on various grounds, although on this motion it confines itself to two, lack of subject matter jurisdiction and failure to state a cause of action (see, CPLR 3211 [a] [2], [7]; [e]; Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C3212:20, at 439).
As intimated, the seminal authority and crux of claimant’s contractual claim is the State Constitution, specifically section 7 of article V.[2] Claimant latches onto the word contractual in the amendment and attempts to construct a new remedy where none is needed, seemingly to avoid the remedy statutorily and contractually mandated (see, at 1047-1049, infra). An analysis of the statutory embodiment of claimant’s constitutional contract rights does not support his would-be independent contract claim.
The purpose of the 1938 State constitutional amendment was to ensure that the retirement benefits of public employees would not be subject to the whims and vagaries of the legislative process, as previously had been the case. (See, Kleinfeldt v New York City Employees’ Retirement Sys., 36 NY2d 95, 99, 101-102, and case quoted.) The pension contract rights it created are limited ones which must be construed in their constitutional context (see, Sgaglione v Levitt, 37 NY2d 507, 511). As with the more well-known Federal constitutional contract provision (see, US Const, art I, § 10), the subject State amendment is concerned with the impairment of rights, specifically, the diminution of retirement benefits. Its purpose is *1047 to protect government employees against detrimental unilateral legislative or executive changes in their pension benefits after the employees have started working for the government. (See, Public Employees Fedn. v Cuomo, 62 NY2d 450, 460, and case quoted; Matter of Village of Fairport v Newman, 90 AD2d 293, 295-296.)
When Mr. Kutas commenced his employment with the State the relevant statute (which was one of the terms of his retirement contract — see, Matter of Guzman v New York City Employees’ Retirement Sys., 45 NY2d 186, 191) provided that all State employees were to be retired at age 70, unless specifically allowed an extension. (See, Retirement and Social Security Law § 70 [b], [c]; Matter of Holbrook v New York State Employees’ Retirement Sys., 79 AD2d 63, 65.) There was no change in this provision during claimant’s employment and this limitation on benefits was also a part of his constitutionally protected retirement contract. For example, the retirement age for claimant could not have been lowered to 65 after he started working if that would have reduced or precluded pension benefits he would otherwise have been entitled to. (See, Matter of Donner v New York City Employees’ Retirement Sys., 33 NY2d 413.)
A further provision in claimant’s constitutional and statutory contract was that any attempt to defraud the System by a false statement or falsifying records was a misdemeanor and the Comptroller was to correct upon discovery any errors which would cause a member of the System "to receive more or less than he would have been entitled to receive had such record been correct” (Retirement and Social Security Law § 111 [b]). We do not believe the inclusion of this error-correcting mandate (see, Matter of Boudreau v Levitt, 67 AD2d 1053, 1054) in the provision on fraud is without meaning. (See, McKinney’s Cons Laws of NY, Book 1, Statutes § 123 [b], at 249, n 38.) We therefore do not find (as claimant would have us do) that this provision’s application is limited to innocent arithmetic errors. (Cf., Matter of Boudreau v Levitt, supra.) Rather, we find it clearly authorizes the Comptroller to correct errors which are fraudulently induced (see also, Matter of Creasy v Roche, 72 AD2d 681, 682).
This statutory/contractual scheme was in place when Mr. Kutas fabricated his way into a State job and it became part of his constitutionally protected contractual pension rights *1048 when he started working.[3] There was no change in these rights and thus they cannot be said to have been unconstitutionally diminished. (Cf., Heath v New York State Teachers’ Retirement Bd., 79 AD2d 838.) Therefore, absent any constitutional breach of said rights, we find claimant has not shown any basis for a contract claim based on the subject constitutional provision.
More to the point, the controversy here clearly involves claimant’s rights under the Retirement and Social Security Law. As noted, these statutory provisions make up the terms of claimant’s retirement contract with the State and just as they are constitutionally binding on the State, they should also be at least legally binding on claimant. Two of these provisions essentially bar the subject claim by themselves. They require that the Comptroller "have exclusive authority to determine all applications for any form of retirement or benefit” and "[s]uch final determination shall be subject to review only as provided in article seventy-eight of the civil practice law and rules.” (Retirement and Social Security Law § 74 [b], [d]; emphasis added.) It is these provisions that form the basis for defendant’s claim of lack of subject matter jurisdiction in this court. It would appear claimant’s independent contract remedy is an attempt to circumvent the statutory and hence contractual requirement that disputes involving retirement benefits be judicially determined through the procedural vehicle of an article 78 proceeding. We discern no intendment in this statute or in said constitutional provision to create a duplicate contractual remedy in this court. (Cf, McKinney’s Cons Laws of NY, Book 1, Statutes §§ 141-144.)
A major reason for claimant’s attempt to avoid the statutorily prescribed article 78 proceeding appears to be certain perceived procedural disadvantages therein versus a contract action. However, all aspects of claimant’s would-be contract claim can be presented in an article 78 proceeding (cf., Pauk v Board of Trustees, 111 AD2d 17, 21, affd 68 NY2d 702) and the claimed variances in procedures are not substantial enough to raise any constitutional question (cf., supra). In fact, this argument was specifically considered in claimant’s prior declaratory judgment action and the court there found no constitutional due process violation in the requirements of *1049 Retirement and Social Security Law § 74 (d). (See, Kutas v New York State Employees’ Retirement Sys., supra.)
By conjuring up an independent pension contract remedy, claimant can invoke the general rule that private contractual rights are not enforceable in an article 78 proceeding (see, Pauk v Board of Trustees, supra, at 20) and thereby claim his constitutional contract rights can only be enforced independently of the Retirement and Social Security Law scheme, to wit, in an independent, "private” contract action in the Court of Claims. The principal authority claimant cites for his manufactured remedy involves a life insurance contract (cf., Matter of Lippman v Board of Educ., 66 NY2d 313) and it merely states that "petitioners may have a remedy based on the contractual relationship existing between the decedent and the respondent” (Matter of Mudzinski v Board of Estimate, 37 Misc 2d 1044, 1045; emphasis added). No reference is made to any provision comparable to said section 74 (d) and we find that to be the most significant distinguishing feature of this case. The other material cases claimant cites to support a claim against the System are also similarly distinguishable since they all involve contract actions based on contract or other rights independent of the Retirement and Social Security Law or comparable provisions. (See, Glassman v Glassman, 309 NY 436; East Hill v New York State Teachers’ Retirement Sys., 80 AD2d 670; Belscher v New York State Teachers’ Retirement Sys., 45 AD2d 206; Edwards v State of New York, 95 Misc 2d 516.) None stand for the proposition that a would-be member’s claim for retirement benefits can be litigated other than as mandated in the statute/contract providing such benefits. What claimant would have this court do is create a contract cause of action not only independent of the Retirement and Social Security Law, but in contradiction to the very terms of this contract/statute on which such a cause would be based. We therefore have no difficulty finding the subject claim wholly within the purview of the Retirement and Social Security Law and hence wholly outside the subject matter jurisdiction of the Court of Claims.
Moreover, even if we were to find this claim within our jurisdiction, we would find no cause of action stated. Fraud in the inducement makes a contract voidable and subject to rescission by the aggrieved party. (See, e.g., Hadden v Consolidated Edison Co., 34 NY2d 88, 98-100; Mix v Neff, 99 AD2d 180, 182-183.) Claimant relies on the former case and its inoperative holding that substantial performance can provide *1050 a basis for retirement benefits. The reason this holding was inoperative is because the Court of Appeals specifically found that fraud concerning facts which would have been grounds for discharge (and hence termination from the subject pension plan) was a potential complete defense to a claim for pension benefits. (See, Hadden v Consolidated Edison Co., supra.) The substantial performance doctrine is based on equitable considerations and such are not applicable where fraud is present. Thus it is not important that claimant’s fraud, even though material, may not have substantially impaired the value of his performance. (Cf., Hadden v Consolidated Edison Co., supra, at 97, n 9, and at 99-100.) What is decisive is Hadden’s ultimate finding that if plaintiff’s fraud prevented defendant from discharging him prior to retirement (and hence denying him benefits), then his would-be pension payments could legitimately be terminated when his fraud was exposed (see, supra, at 99), notwithstanding the performance and "consideration” theretofore rendered by claimant (see, supra, at 97-98). In fact, this is what eventually happened in Hadden. (See, Hadden v Consolidated Edison Co., 45 NY2d 466.) Here, Mr. Kutas’ fraud did not merely prevent the State from retiring him, it induced defendant to hire him in the first place. Thus claimant’s argument that his retirement benefits will cost the State less than if a younger man had filled his job is similarly beside the point. All the material authorities claimant cites on this issue suffer the same critical distinguishing feature, to wit, they all specifically make exception for fraud. (See, Hadden v Consolidated Edison Co., 34 NY2d 88, supra; Manowitz v Senter, 62 AD2d 898, 903-904; Matter of Haugh v Levitt, 33 AD2d 838, 839.)
The conclusion to be drawn here from the Court of Appeals ultimate determination in Hadden (supra) is that an employee’s fraud which prevents his employer from properly terminating his pension membership before retirement warrants termination of the employer’s obligation to pay pension benefits to such an employee upon discovery of that fraud after retirement. Public employment is involved in this case and considerations of public policy would seem to add to the impropriety of paying benefits in the face of admitted fraud of the System. (Cf. generally, Matter of Guzman v New York City Employees’ Retirement Sys., supra, 45 NY2d, at 193.) After all, claimant’s conduct here was a crime. (See, Retirement and Social Security Law § 111 [a]; Penal Law § 10.00 [6].) We thus think it clear from claimant’s own admission of fraud in his *1051 claim that no legal contract cause is stated, either express, under the Retirement and Social Security Law,[4] or implied-in-law (see generally, 22 NY Jur 2d, Contracts, §§ 485, 490, 537, 548).
Of course, as above found, the ultimate judicial arbiter of claimant’s pension rights is the Supreme Court in the pending article 78 proceeding. Our findings here relative to merit are thus merely supportive of our finding of lack of jurisdiction and are not intended to encroach on the Supreme Court’s jurisdiction. Claimant presumably still has his action there and that is where the ultimate determination of his pension claim should be made.

 Age discrimination is not involved in this claim. (See, Executive Law § 296 [3-a] [a], prior to amendment by L 1984, ch 296, §§ 1 [eff Jan. 1, 1985], 12 [i].)

 The fact these rights did not include the right to any retirement benefits is claimant’s fault, not the State’s. He is the one who chose to defraud his way into a job when he knew or should have known he could not legally accumulate any retirement benefits therein.

 Claimant presented no proof of any express contract other than the Retirement and Social Security Law, nor of any facts to support an implied-in-fact contract.