FILED

NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

APR 26 2010

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| FOSTER POULTRY FARMS, INC.; FRESNO FARMING, LLC, <br><br>       Plaintiffs - Appellees, <br><br>   v. <br><br> SUNTRUST BANK, <br><br>       Defendant - Appellant. | No. 08-16765 <br><br> D.C. No. 1:04-cv-05513-OWW-SMS <br><br><br> MEMORANDUM [*] |
| FOSTER POULTRY FARMS, INC.; FRESNO FARMING, LLC, <br><br>       Plaintiffs - Appellants, <br><br>   v. <br><br> SUNTRUST BANK, <br><br>       Defendant - Appellee. | No. 08-16828 <br><br> D.C. No. 1:04-cv-05513-OWW-SMS |

Appeals from the United States District Court
for the Eastern District of California
Oliver W. Wanger, District Judge, Presiding

Argued and Submitted March 9, 2010
San Francisco, California

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

Before: WALLACE, GRABER, and McKEOWN, Circuit Judges.

Foster Poultry Farms, Inc. and Fresno Farming, LLC (together, Foster) brought claims against SunTrust Bank (SunTrust) arising out of the banking relationship between the parties during two business transactions. Following a bench trial in the district court, both parties appealed from the district court's judgment. As this was a bench trial, we review the district court's findings of fact for clear error and the district court's legal conclusions de novo. *Friends of Yosemite Valley v. Norton*, 348 F.3d 789, 793 (9th Cir. 2003). We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm in part, and reverse and remand in part.

## I.

Although Foster did not prove the extent to which SunTrust used Foster's confidential information, SunTrust argues that the district court clearly erred in finding inferred facts demonstrating that SunTrust had breached the confidentiality agreement. We hold that the district court did not clearly err in drawing an inference that SunTrust officials "would have reviewed and considered" Foster's confidential financial data in approving the loans to the trusts, and that the information "was material to and used to facilitate the approval of the monetization." Although Foster presents only circumstantial evidence of the

2

extent to which SunTrust used its information, the inferences favorable to Foster "are more reasonable or probable than those against" Foster. *Ambriz v. Kelegian*, 53 Cal. Rptr. 3d 700, 712 (Cal. Ct. App. 2007).

First, due to the nature and structure of the monetization, it was unlikely that SunTrust's loan officers would not have considered the financial health of Foster relevant, where Foster was one of the primary obligors and the ultimate guarantor of the notes, where Foster was the first level of collateral for the loans to the trusts, and where the trusts apparently had no assets. Foster's expert testified it was "unrealistic" that SunTrust would have proceeded with the monetization based solely on the strength of the letters of credit, but would likely have relied on Foster's financial information to determine the credit risks.

Second, the circumstances surrounding the monetization support the district court's inferred fact. The Credit Package stated that SunTrust was "not relying on the credit quality of our borrower," but rather "on the underlying support of the L-C's [letters of credit] issued by SunTrust Bank . . . as well as the overall structure of the transaction," and that SunTrust's role as agent for Foster's financing arrangements "provides comfort with the details and big picture mechanics" of the monetization. The same SunTrust officials who recommended and approved the monetization had also worked on the Zacky acquisition; the

3

officer who prepared the Credit Package admitted that Foster's confidential information should not have been included in the Credit Package, and that the officers who approved the monetization likely read the Credit Package.

Finally, the notes themselves anticipated that any bank considering monetization of the notes would want to see Foster's recent annual financial statements; this is further recognition that Foster's financial health was a relevant factor in the monetization. It is also undisputed that the Credit Package included more confidential information than Foster would have been obligated to provide under the terms of the notes.

Given all of the above, it was not mere "suspicion, imagination, speculation, surmise, conjecture or guesswork," *Beck Dev. Co. v. S. Pac. Transp. Co.*, for the district court to find that SunTrust used Foster's information to evaluate and make decisions about the proposed monetization, and thereby violated the confidentiality agreement. 52 Cal. Rptr. 2d 518, 547-48 (Cal. Ct. App. 1996).

## II.

SunTrust next argues that the district court erred in awarding disgorgement to Foster for breach of the confidentiality agreement, in the absence of evidence that the breach had caused Foster any actual injury. SunTrust argues that its breach

4

of the confidentiality agreement should have entitled Foster to, at most, only nominal damages.

The district court found no evidence that Foster's information was disclosed to anyone outside SunTrust, and no economic harm to Foster resulting from the breach. However, the district court held that, while Foster's "losses [due to the breach of the confidentiality agreement] are difficult to assess and quantify, . . . SunTrust's gains from the breach . . . are specifically quantifiable and represented by the amount of interest and fees earned under the Term Loans to the Trusts," and awarded Foster disgorgement of those gains.

Under California law, disgorgement of improperly obtained profits can be an appropriate remedy for breach of a contract protecting trade secrets and proprietary confidential information. *See Ajaxo Inc. v. E\*Trade Group, Inc.*, 37 Cal. Rptr. 3d 221, 247-49 (Cal. Ct. App. 2005); *see also Snepp v. United States*, 444 U.S. 507, 511-15 (1980) (per curiam) (constructive trust on profits from a book was an appropriate remedy for breach of a contract requiring author to submit his material for clearance by the Central Intelligence Agency before publication, where the government's harm from the breach was unquantifiable, but author's unjust gains were the result of the breach). It is true that a "breach of contract without damage[s] is not actionable." *Patent Scaffolding Co. v. William Simpson Constr.*

5

*Co.*, 64 Cal. Rptr. 187, 191 (Cal. Ct. App. 1967). But here, while Foster did not prove financial injury, Foster, like the government in *Snepp*, suffered intangible harm. First, affiliates of its competitor, Zacky Farms, obtained a benefit they might not have obtained otherwise. The district court found that Zacky Farms was Foster's competitor in certain areas of business even after Foster acquired some of Zacky's assets. The district court also characterized the family trusts as Foster's "competitor," and found that SunTrust enabled the trusts to monetize the notes in a "unique" and "atypical" transaction in which, due to SunTrust's role in Foster's credit arrangements, SunTrust was "in the best position to perform the monetization [that] another prominent bank was unwilling to perform."

Second, and perhaps more important, not only did Foster not get the benefit of the bargain of the confidentiality agreement, but SunTrust misused Foster's information *for its own profit*. We hold that, under California law, a defendant's unjust enrichment can satisfy the "damages" element of a breach of contract claim, such that disgorgement is a proper remedy. *See Ajaxo*, 37 Cal. Rptr. 3d at 247-49 (disgorgement appropriate where defendant was unjustly enriched by breaching a non-disclosure agreement). In the cases cited by SunTrust, in support of its argument for nominal damages, there was no evidence that the breaching party gained an unfair profit thanks to its breach. *See, e.g., Ericson v. Playgirl, Inc.*, 140

6

Cal. Rptr. 921, 923-24 (Cal. Ct. App. 1977) (awarding nominal damages where the plaintiff did not prove that the breach "did in fact damage him in any substantial way or in any specific amount"); *Avina v. Spurlock*, 105 Cal. Rptr. 198, 200 (Cal. Ct. App. 1972) ("Nominal damages are properly awarded . . . [w]here there is no loss or injury to be compensated but where the law still recognizes a technical invasion of a plaintiff's rights or a breach of a defendant's duty..."); *Bettolo v. Safeway Stores, Inc.*, 54 P.2d 24 (Cal. Ct. App. 1936) (the plaintiff could recover only nominal damages on a false imprisonment claim). On the other hand, as in *Snepp*, nominal damages here would be "a hollow alternative," 444 U.S. at 514, effectively allowing a bank to profit from a client's confidential information, in violation of a contract, as long as the breach does not directly cause the client damage. If a bank chooses to use sensitive client data for the bank's own gain, it can seek to preserve that option in its client contracts; but it may not promise to use information only for certain purposes, breach that promise, and retain the profits therefrom. That, we hold, distinguishes the cases relied on by SunTrust. We hold the district court properly awarded Foster SunTrust's profits resulting from the breach.

**III.**

For its part, Foster argues that the district court erred in applying laches *sua sponte* to limit Foster's disgorgement award. The critical fact is that laches was never raised as an affirmative defense in SunTrust's pleadings as required by Federal Rule of Civil Procedure 8(c)(1). Furthermore, the pretrial order, which under Federal Rule of Civil Procedure 16(d) "controls the course of the action unless the court modifies it," and which may not be modified after the final pretrial conference except "to prevent manifest injustice," Fed. R. Civ. P. 16(e), never mentioned a laches defense, and was never amended to include one. *See Magana v. Northern Mariana Islands*, 107 F.3d 1436, 1446 (9th Cir. 1997) (recognizing that although we have somewhat "liberalized the requirement that defendants must raise affirmative defenses in their initial pleadings," an affirmative defense may be raised for the first time in a summary judgment motion "only if the delay does not prejudice the plaintiff"); *Prieto v. Paul Revere Life Ins. Co.*, 354 F.3d 1005, 1012-13 (9th Cir. 2004) (reversing a district court's *sua sponte* finding of waiver because waiver had not been affirmatively pled and references at trial to a party's delay "only inferentially" supported a waiver theory, but there was "no indication that [the party against whom waiver was applied] recognized waiver was being raised or consented to the issue being tried"). Here, it was clear from the pretrial

8

order that Foster sought the equitable remedy of disgorgement, yet SunTrust never pled laches as an affirmative defense, and the pretrial order did not put Foster on notice that laches would be an issue at trial. The district court's reduction of Foster's disgorgement award on grounds of laches must be reversed.

## IV.

The district court held that SunTrust breached the transfer provision of the letters of credit and, by extension, the Credit Agreement, but that the breach was non-material; under New York law, only a material breach excuses a non-breaching party's performance. Foster appeals from the award of damages, urging that SunTrust's breach was material and Foster should be excused from its own performance under the letters of credit, and should receive damages in the amount of the fees it paid to SunTrust for the letters of credit from the date of the breach until the letters' expiration.

Foster is correct that the district court applied the wrong law in holding that the breach was not material. Under New York law, which governs the letters of credit and the Credit Agreement, the court should have applied the analysis described in the Restatement (Second) of Contracts, section 241, not that described in *Hadden v. Consolidated Edison Co. of New York, Inc.*, 312 N.E.2d 445, 449 (N.Y. 1974). *Hadden* examined whether an employee had substantially performed

9

under a contract, not whether his breach was material. 312 N.E.2d at 449-50 & n.9. However, any error would be harmless if application of the proper test would yield the same result: SunTrust's breach was not material.

To decide "whether a failure to render performance constitutes a material breach," New York courts look to five elements identified in the Restatement (Second) of Contracts section 241:

> (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
> (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
> (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
> (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;
> (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

*Bear, Stearns Funding, Inc. v. Interface Group-Nev., Inc.*, 361 F. Supp. 2d 283, 296 (S.D.N.Y. 2005). "Under New York law, for a breach of a contract to be material, it must go to the root of the agreement between the parties. A party's obligation to perform under a contract is only excused where the other party's breach of the contract is so substantial that it defeats the object of the parties in

10

making the contract." *Frank Felix Assocs., Ltd. v. Austin Drugs, Inc.*, 111 F.3d 284, 289 (2d Cir. 1997) (internal quotation marks and citations omitted).

Foster first argues that the purpose of the letters of credit was defeated by SunTrust's breach because, once the letters of credit and notes were improperly transferred, the letters of credit provided no security and were essentially useless. Foster expressly abandoned that argument at trial, and we do not consider it.

Foster next argues that, even if the letters of credit continued to provide security, the breaches were material because Foster lost the ability to negotiate the terms of the letters of credit with only one party, which increased the risk borne by Foster. However, Foster does not assert that it tried to renegotiate and was unable to do so, and there was no call on the letters of credit, no default under the notes, and no other event that caused anything more than a theoretical higher risk. Nor does Foster's reliance on *First Interstate Bank of Idaho v. Small Business Administration*, 868 F.2d 340 (9th Cir. 1989), change our view. There, the contract clearly stated that the Small Business Administration (SBA) had no obligation to perform if the bank did not substantially comply with the terms. *Id.* at 343. Moreover, though the SBA was not harmed financially, the bank's failure to disburse the loan proceeds according to the contract frustrated the SBA's aim in entering the contract with the bank in the first place (its aim being not profit for

11

itself but the bank's assistance in allowing a small business to obtain specific capital improvements). Here, the district court did not clearly err in finding that Foster's purpose in entering the contract was to obtain the security required to complete the Zacky acquisition, and that the letters of credit provided that security and continued to do so until their expiration.

Therefore, under the first two parts of Restatement section 241, Foster received the benefit it reasonably expected. As to the third test, SunTrust would suffer a forfeiture if Foster were to be relieved of its fee obligations, because SunTrust would have administered the letters of credit and secured the notes for free. As to the fourth part, to the extent there was a risk inherent in the fact that, at one time, the letters of credit and the notes were not held by a single party, that risk has now disappeared. The trusts have paid off the monetization loans to SunTrust, and the letters of credit and notes have been returned to the trusts, thereby rendering moot the faulty transfers to SunTrust. There is no ongoing risk to Foster, which has changed banks and now secures the notes via a letter of credit from a different bank. On the fifth test, the district court found insufficient evidence that the monetization represented a conflict of interest, and there is no evidence that SunTrust's breach of the transfer provisions was due to bad faith rather than, as the record suggests, a result of faulty legal advice.

12

We do not reach the parties' arguments regarding Section 2.2(j) of the Credit Agreement. To the extent that SunTrust urges this provision as an additional ground for limiting Foster's recovery, we need not reach that issue because we hold that SunTrust's breach was not material. To the extent that Foster argues the district court erred in its analysis of Section 2.2(j) or in its application to the facts of this case, Foster failed to raise those arguments in its opening brief, and they are waived. *Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994) (we "review only issues which are argued specifically and distinctly in a party's opening brief").

## V.

Foster argues that the district court should have awarded it the expenses incurred in proving facts at trial that SunTrust refused to admit in response to two requests for admission (RFA). Under Federal Rule of Civil Procedure 37(c), if a party fails to admit an RFA and the matter at issue in the RFA is later proved true, the requesting party can seek its reasonable expenses, including attorneys' fees, incurred in developing that proof, and the court must order such expenses unless "(A) the request was held objectionable under Rule 36(a); (B) the admission sought was of no substantial importance; (C) the party failing to admit had a reasonable ground to believe that it might prevail on the matter; or (D) there was other good reason for the failure to admit." Fed. R. Civ. P. 37(c)(2). We review the denial of

13

a motion for fees under Rule 37 for abuse of discretion. *Comeaux v. Brown & Williamson Tobacco Co.*, 915 F.2d 1264, 1268 (9th Cir. 1990).

We hold that the district court abused its discretion in denying Foster's expenses associated with RFA 103, which asked SunTrust to admit "that during the course of the Monetization, SunTrust and its agent(s) referred to [Foster's] confidential financial information in their possession." Though related to a larger issue of whether SunTrust "used" Foster's information, the RFA asked only the preliminary question of whether SunTrust "referred to" the information, which does not necessarily admit "use." SunTrust may have reasonably believed it could show at trial that it did not "use" the information, but it was unreasonable to refuse to admit that it had at least "referred to" the information, which was incorporated in the Credit Package.

The district court also abused its discretion in denying Foster's fee requests as to RFAs 154, 155 and 156, which asked SunTrust to admit "that SunTrust is not the Holder" of each of the promissory notes at issue. SunTrust ultimately conceded at trial that it never became the holder of the notes. SunTrust had apparently relied on its lawyer to structure the monetization so as to make SunTrust a holder. However, such reliance at the time of the August 2002 transaction does not excuse SunTrust's independent duty as of the time of its

14

January 2005 response to the RFA to try to determine the truth of the matter, and to establish whether its reliance on its former counsel's legal advice about its holder status was reasonable. There is no "per se rule that reliance on an expert opinion provides a reasonable ground for a party to believe he would prevail at trial." *Marchand v. Mercy Med. Ctr.*, 22 F.3d 933, 937 (9th Cir. 1994). SunTrust could have determined, during the intervening years, that its former lawyer lacked a reasonable basis for his legal opinion, and that in fact, it was not the holder of the notes. It failed to do so, and Foster had to prove those facts at the September 2007 trial. Rule 37(c)(2) requires the award of expenses incurred in developing that proof.

Finally, the district court abused its discretion in denying Foster's Rule 37(c) motions on the ground that "if [Foster] believed [SunTrust's] response to requests for admission were incomplete or insufficient they should have moved to enforce under Rule 37." We have held that a requesting party's "failure to move for an order concerning the [other party's] objection [to the RFA]" does not bar him from later recovering expenses, because it is "unduly burdensome to require each and every objection to be challenged in order for sanctions to issue." *Marchand*, 22 F.3d. at 938.

**AFFIRMED IN PART, and REVERSED and REMANDED IN PART.**

SunTrust is to bear Foster's costs on appeal.