**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2293
_____

In re:  FRANCES SCARBOROUGH,
                                        Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Nos. 2-07-cv-04236 & 2-09-cv-01984)
District Judge:  Honorable Ronald L. Buckwalter

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 10, 2012

Before: AMBRO, FISHER and NYGAARD, <u>Circuit</u> <u>Judges</u>

(Opinion filed  January 10, 2012)
_____

OPINION
_____

PER CURIAM

Frances Scarborough appeals orders from two consolidated District Court cases

that arose from two related matters in bankruptcy court.  We will affirm.

I.

We must begin by recounting the pertinent procedural history of this particular

bankruptcy case, which has been winding on in one fashion or another for over a decade.

At its core, this is an action about appellant Scarborough's attempts to prevent or otherwise negate foreclosure proceedings against 5116 North Warnock Street in Philadelphia by utilizing the tools available under both federal bankruptcy law and state law. As we deal with but a small facet of the matter, we do not intend what follows to be exhaustive with regard to the plentiful filings and separate bankruptcy proceedings Scarborough has initiated.

A) Main Case and First Adversary Proceeding

In 2001, Scarborough filed for protection under Chapter 13 (11 U.S.C. §§ 1301–30) of the United States Bankruptcy Code. See generally E.D. Pa. Bankr. No. 01-35194 (the "main case"). Shortly thereafter, she began an adversary bankruptcy proceeding ("first adversary proceeding"), whose primary goal was the bifurcation of creditor Chase Manhattan's[1] mortgage claim into secured and unsecured claims via 11 U.S.C. § 506(a). Bankruptcy Judge Kevin J. Carey determined that Scarborough was "barred from bifurcating the secured claim of Chase Manhattan pursuant to 11 U.S.C. § 1322(b)(2)." Scarborough v. Chase Manhattan Mortg. Corp. (In re Scarborough), Adversary No. 02-858, 2003 Bankr. LEXIS 2096, at *3 (Bankr. E.D. Pa. Oct. 14, 2003). Scarborough appealed.

While the appeal in the first adversary proceeding was pending, the main case continued. Despite filing multiple Chapter 13 plans, Scarborough was unable to satisfy

---

[1] The relevant other parties in this action are Chase Manhattan Mortgage Corporation ("Chase Manhattan" and "Chase") and Chapter 13 trustee William C. Miller.

the Bankruptcy Court as to her plans' feasibility.  In a memorandum and order of July 21, 2005, Judge Carey denied confirmation of Scarborough's Amended Chapter 13 plan and dismissed the bankruptcy case.  See Main Case ECF No. 228.[2]  Scarborough appealed to the District Court, arguing, inter alia, that feasibility should not be determined before the bifurcation issue was definitively resolved on appeal.  The District Court "disagree[d] with [Scarborough's] premise" and "affirm[ed] the Bankruptcy Court's decision to deny confirmation of [her] amended Chapter 13 plan," but it observed that "[i]f the Third Circuit overturns the Bankruptcy Court's denial of [her] request for bifurcation, the [District] Court will take the appropriate action."  Scarborough v. Chase Manhattan Mortg. Corp. (In re Scarborough), No. 05-4548, 2006 U.S. Dist. LEXIS 21382,  at *9–10 (E.D. Pa. Apr. 20, 2006).  Scarborough again appealed to this Court.

B) Our 2006 Decisions

In 2006, we resolved both the appeal of Scarborough's bifurcation issue from the first adversary proceeding and her first appeal from the main case.  We held in her favor on the statutory question, concluding: "a mortgage secured by property that includes, in addition to the debtor's principal residence, other income-producing rental property is secured by real property *other than* the debtor's principal residence and, thus, that

---

[2] We observe that, shortly after this dismissal, Scarborough moved both for reconsideration and for the Bankruptcy Court to "grant a stay of relief from collection activity from all creditors pending the outcome of my motion to reconsider and vacate or modify this court's order denying confirmation of plan and dismissing case."  Main Case ECF Nos. 232–33 (capitalization modified).  Both motions were denied, see Main Case ECF Nos. 241–42.

3

modification of the mortgage is [statutorily] permitted." Scarborough v. Chase Manhattan Mortg. Corp. (In re Scarborough), 461 F.3d 406, 408 (3d Cir. 2006) (emphasis in original). Therefore, Chase's claim "*can* be modified," id. at 414 (emphasis added), although we did not decide whether it should be. With regard to the separate appeal from the main case, we determined that we lacked jurisdiction due to the contingent nature of the District Court's order. See In re Scarborough, 212 F. App'x 89, 91–92 (3d Cir. 2006). The net result: a remand to Bankruptcy Court for further proceedings on the main case.

C) Denied Anew

Back in Bankruptcy Court, Chase moved for relief from the reinstated automatic stay. In the process, Chase emphasized that "[d]uring the pendency of the . . . appeals there was no stay in place. The Debtor's request for a stay pending appeal was denied." See Main Case ECF No. 270 ¶ 9.

During late August and early September of 2007, hearings were held on Chase's motion and on the possibility of confirming Scarborough's latest Chapter 13 plan.[3] On September 5, the Bankruptcy Court issued a thorough opinion from the bench, in which it "den[ied] confirmation of the plan and dismiss[ed] this bankruptcy case." Tr. 17:10–11, Main Case ECF No. 293. Even assuming various plan tolling factors and bifurcation outcomes in Scarborough's favor, the Court found Scarborough to have failed to

---

[3] By this juncture, the main case had been reassigned to Judge Eric L. Frank.

demonstrate persuasively the fair-market value of her property.[4]

> Nor did the debtor persuade me on the present record that she can afford a $445 payment for three years which is the calculation I've come to making a number of favorable assumptions, especially because the debtor would be obliged, as a matter of adequate protection, to maintain payments of taxes every year and – and insurance on the property. So the payment would be even higher than [$]445. Nothing in the history of the case that goes back to at least 2001, perhaps 1998 or even further, gives me any confidence the debtor can perform such a plan. . . . The debtor's testimony did not persuade me that her financial condition has improved[;] . . . if anything, the evidence suggests that her income may well decrease and it certainly has been irregular. In short, the debtor's evidence was inadequate to convince[ ] me to exercise any discretion that I may have to turn this Chapter 13 bankruptcy case into an eight-and-a-half-year to nine-year Chapter 13 bankruptcy. . . . So in light of this reasoning and this decision, I conclude that the appropriate action is for me to deny confirmation and dismiss the case. . . . For those reasons, I conclude the [relief from automatic stay] motion is moot.

Tr. 19:20–21:6. While the Court acknowledged some scenarios under which a case posture could be more favorable to Scarborough, it ruled that "the shelf life of this case has expired." Tr. 22:10–11. See also Order, Main Case ECF No. 283.

Scarborough filed a timely notice of appeal. The appeal was docketed in the United States District Court for the Eastern District of Pennsylvania under case number 07-4236—the first of the two consolidated cases now before this Court. Before we discuss the District Court proceedings, however, we must lay the foundation for the other case with which 07-4236 was ultimately joined.

---

[4] The Court did stress that there was "circumstantial evidence suggesting that the fair market value [of the property] [wa]s far below the outstanding balance of Chase's claim," but explained that Scarborough had provided "inadequate evidence" to grant the Court "equitable discretion" to "extend the plan out beyond five years." Tr. 21:15–20.

D) Second Adversary Proceeding

In March of 2008, Scarborough filed another adversary proceeding. See generally E.D. Pa. Bankr. No. 08-00058 ("second adversary proceeding"). She sought, first, an "injunction to stop the sheriff sale of my home on April 1, 2008." Compl. ¶ 3, Second Adversary Proceeding ECF No. 1. Scarborough also sued for "damages amounting to $100,000" stemming from "Chase's violation of the automatic stay"—for, in other words, Chase's pursuit of foreclosure between the July 21, 2005 dismissal of bankruptcy proceedings and the April 11, 2007 order[5] vacating judgment and remanding the matter back to bankruptcy court following our 2006 decisions in Scarborough's appeals. Compl. ¶ 4–5. Scarborough maintained that, pursuant to her eventual success on appeal, "the 21 month period of time during the pendency of the Plaintiff[']s appeal is treated as if that length of time never occurred, for the purposes of this instant bankruptcy case." Compl. ¶ 5. Thus, according to Scarborough, the automatic stay was retroactively restored after her bankruptcy case was remanded, and Chase had violated the stay by pursuing the foreclosure in the interim. During the pendency of the second adversary proceeding, the subject premises were sold at Sheriff's sale.[6]

Following a lengthy hearing, at which Scarborough was represented by counsel, the Bankruptcy Court dismissed the second adversary proceeding, determining that— absent a due-process violation or similar major error—there was no reason to hold that an

---

[5] See Order, E.D. Pa. Civ. No. 2:05-cv-04548 ECF No. 16.

[6] We note that the property was *not* sold during the period about which Scarborough complained.

6

automatic stay would or should retroactively apply if a bankruptcy dismissal was later reversed on appeal. See Tr. 37:14–19, Second Adversary Proceeding ECF No. 27-1. The court further noted that to hold to the contrary would "obliterate[] the concept of a stay pending appeal." Tr. 38:7–8. For those reasons, the complaint was deemed to lack merit. Tr. 41:12–13.

Scarborough appealed, and the District Court[7] eventually remanded. However, the Court's memorandum revealed that it believed to have before it appeals from both "the dismissal of the adversary proceeding[] *and from the ultimate dismissal of the bankruptcy itself.*" In re Scarborough, No. 08-cv-04873, 2009 U.S. Dist. LEXIS 4279, at *3 (E.D. Pa. Jan. 22, 2009) (emphasis added). It also observed that "the bankruptcy stay is now in effect, and precludes any further action to enforce the creditor's claim, unless approved in this proceeding." Id. at *4. The District Court instructed the Bankruptcy Court to, inter alia, hold a hearing on the bifurcation issue and to conduct proceedings "enabling the debtor to propose a feasible plan, if possible." Id.

On remand, the Bankruptcy Court concluded that it could not follow the District Court's mandate, as the "only subject of the appeal [to the District Court] was the [second adversary proceeding] Dismissal Order." Scarborough v. Chase Home Fin., LLC (In re Scarborough), Adv. No. 08-00058, 2009 Bankr. LEXIS 2769, at *11 n.14 (Bankr. E.D. Pa. Apr. 8, 2009). Following the mandate here, the Bankruptcy Court reasoned, was prevented by the "manifest injustice" exception to the ordinary rule of appellate review;

"(1) there is a clear error and (2) this court lacks jurisdiction to carry out the District Court's instructions." Id. at *13–14. The Court dismissed the case anew, albeit for the same reasons expressed prior, but indicated its willingness to follow the mandate should the District Court "reaffirm[] its stance and remand[] . . . with the same instructions as before." Id. at *18–19 & n.18.

Scarborough again appealed, leading to the second case (09-01984) from which the action before us arises. On October 19, 2010, the District Court consolidated the two cases.

E) The District Court Opinion and Aftermath

The District Court cast the central issue in the consolidated appeal as follows: "did the Bankruptcy Court correctly determine that the Chapter 13 Plan was not confirmable as set forth in its September 5, 2007 bench order[?]" Scarborough v. Miller (In re Scarborough), Nos. 07-4236 & 09-1984, 2011 U.S. Dist. LEXIS 10049, at *2 (E.D. Pa. Feb. 2, 2011). It observed that, with regard to the issue of valuation—the central, disputed factual finding—Scarborough "never took any steps to meet her burden of proof in that regard." Id. at *3. The District Court analyzed the findings of the Bankruptcy Court and found them to be a) not clearly erroneous and b) fully consonant with the law. Id. at *7–8. It therefore denied the appeals. Following prodding by Chase regarding apparently unresolved issues from the second adversary proceeding, the District Court

---

[7] This appeal was not assigned to Judge Buckwalter, who was otherwise handling the main-case appeal in District Court, perhaps leading to some of the confusion that was to follow.

clarified that it also believed that the Bankruptcy Court "was correct in determining that no stay was in effect during the time [Chase] commenced its foreclosure action." Scarborough v. Miller (In re Scarborough), Nos. 07-4236 & 09-1984, 2011 U.S. Dist. LEXIS 13771, at *3 (E.D. Pa. Feb. 11, 2011) (supplemental memorandum). Scarborough's timely Fed. R. Civ. P. 59/60 motion was denied, and she thereafter filed a timely notice of appeal—bringing us out of the past and into the present.

II.

Scarborough raises a variety of substantive and procedural claims. Deriving our jurisdiction from 28 U.S.C. §§ 158(d) and 1291, we will first address those issues that relate to the denial of the second adversary proceeding before moving to those arising from the main case.

A) Second Adversary Proceeding

Scarborough's challenges here are based on questions of law. Accordingly, our review is plenary. In re Montgomery Ward, LLC, 634 F.3d 732, 736 n.3 (3d Cir. 2011). Scarborough first alleges that the Bankruptcy Court erred by failing to comply with the January 22, 2009 memorandum and order of the District Court, which purported to remand the case "for the purpose of (1) holding a hearing to establish the secured amount of Chase's claim; (2) enabling the debtor to propose a feasible plan, if possible; and (3) establishing a reasonable time-frame for the further conduct and ultimate resolution of this bankruptcy proceeding." In re Scarborough, 2009 U.S. Dist. LEXIS 4279, at *4.

As Scarborough correctly observes, it is "axiomatic that on remand for further

9

proceedings after decision by an appellate court, the trial court must proceed in accordance with the mandate and the law of the case as established on appeal." Bankers Trust Co. v. Bethlehem Steel Corp., 761 F.2d 943, 949 (3d Cir. 1985); see also Skretvedt v. E.I. Dupont de Nemours, 372 F.3d 193, 203 (3d Cir. 2004). But it is equally axiomatic that a court may not act outside the scope of the jurisdiction granted to it. Williamson v. Berry, 49 U.S. (8 How.) 495, 543 (1850); cf. USPPS, Ltd. v. Avery Dennison Corp., 647 F.3d 274, 284 (5th Cir. 2011) ("The federal courts are courts of limited jurisdiction and are tasked with the duty to continually, and sua sponte, assess their jurisdiction."); Finberg v. Sullivan, 658 F.2d 93, 96 n.5 (3d Cir. 1980).

It is clear that the District Judge lacked jurisdiction over the main case at the time he issued his January 22 memorandum. Moreover, the Bankruptcy Court lacked jurisdiction to carry out the mandate, as the earlier notice of appeal filed in the main case had divested the Court of its power to further address the central bankruptcy issues. See Venen v. Sweet, 758 F.2d 117, 120–21 (3d Cir. 1985); Main Line Fed. Sav. & Loan Ass'n v. Tri-Kell, Inc., 721 F.2d 904, 906 (3d Cir. 1983). Accordingly, we cannot impute the power of the law of the case doctrine onto a mandate that was issued erroneously and without jurisdiction.[8]

Turning, then, to Scarborough's substantive argument, we determine that the

---

[8] We note, further, that the Bankruptcy Court's decision to reenter its order can plausibly be viewed as an attempt to seek clarification from the District Court as to the intended scope of its mandate; indeed, the Bankruptcy Court expressed willingness to follow the District Court's instructions were it to enter the same judgment the second time around. Of course, the District Court did no such thing.

10

Bankruptcy Court did not err in deciding that the automatic stay did not apply retroactively to the "gap period" between its 2005 dismissal of the main case and the District Court's 2007 order vacating that dismissal.[9]  An automatic stay is dispelled when the underlying case is dismissed.  See 11 U.S.C. § 362(c)(2)(B); In re Taylor, 81 F.3d 20, 23 (3d Cir. 1996).  Cases suggesting the possibility of the "retroactivity" of the stay are inapposite and distinguishable, as Scarborough has not shown that she was denied due process or otherwise suffered a constitutional injury.  See, e.g., Turtle Rock Meadows Homeowners Ass'n v. Slyman (In re Slyman), 234 F.3d 1081, 1087 (9th Cir. 2000) (order of dismissal was void, and automatic stay was "continuously in effect from the date the petition was filed"—rendering foreclosure sale "without effect"—as "dismissal of a case because a debtor failed to attend a meeting of which he had not been notified" was in violation of due process) (citations, quotations omitted).  As there was no automatic stay in effect, then Chase cannot be held liable for proceeding with foreclosure procedures during the gap period.[10]

Therefore, we will affirm the judgment of the District Court with regard to the matters arising in the second adversary proceeding.  We turn now to the appeal of the

---

[9] We agree with Chase that the 2005–2007 period is the correct one.  Neither of our 2006 decisions had the effect of vacating the order dismissing the main case.  The first settled a question of law raised in the first ancillary proceeding, while the second simply determined that we lacked jurisdiction over a contingent order.

[10] Scarborough argues, in the alternative, that Chase should have seen the writing on the wall once we rendered our 2006 decisions.  But she fails to point to any provision of law that would impart independent civil liability for foreclosing in the wake of a probability that a stay would, at some point in the future, be reinstated—and, moreover, once the stay was reimposed, Chase quickly moved to quash it.

11

main case.

B) Main Case

Scarborough also raises a number of procedural and substantive arguments with regard to her main case, not all of which are relevant or meaningfully reviewable.[11] Exercising plenary review over the District Court's appellate review of the Bankruptcy Court, we review factual findings for clear error and legal conclusions de novo. JELD-WEN, Inc. v. Van Brunt (In re Grossman's Inc.), 607 F.3d 114, 119 (3d Cir. 2010) (en banc).

Throughout her submissions, Scarborough argues that the Bankruptcy Court ignored the mandates of this Court and the District Court in resolving the main case. She contends that the Bankruptcy Court should have relied upon 2002 valuations in determining her plan's confirmability, and should also have explicitly resolved bifurcation (in the form of the adversary proceeding) before taking any other action.

While we cannot speak to the intent behind the District Court mandates, we *can* decisively conclude that Scarborough reads our 2006 decision in her favor too broadly. In that opinion, we determined whether "a mortgage on a multi-unit dwelling in which the debtor resides qualifies for the anti-modification protection afforded by 11 U.S.C. § 1322(b)(2)," holding that modification was permitted. Scarborough v. Chase

_____

[11] Also, she asserts, for the first time on appeal, several factual contentions (such as incorrect mathematical calculations by the Bankruptcy Court) that do not appear to have been raised below; hence, they are waived. See Knop v. McMahan, 872 F.2d 1132, 1143 n.20 (3d Cir. 1989).

Manhattan Mortg. Corp. (In re Scarborough), 461 F.3d at 408. Section 1322(b) states

that a Chapter 13 plan *may* "modify the rights of holders of secured claims"—not that it

must do so. Compare with 11 U.S.C. § 1322(a) (establishing what the Chapter 13 plan

"shall" contain). In announcing the possibility of modification as to the claim brought by

Scarborough, we did not instruct the District Court or the Bankruptcy Court to resolve

matters in any particular order or in satisfaction of any procedural formality, and

Scarborough cites no case law that would bind the District or Bankruptcy Courts to the

order of action she prescribes.[12]

Furthermore, we read the relevant Bankruptcy Court's decision as *assuming the*

*success* of the hearings she requests. For example, its outcome was based on the

presumption that Scarborough could bifurcate the claim and that the $13,000 property

value she proposed—a property value that, it seems, was never supported in Bankruptcy

Court with admissible evidence—could be the value of the secured debt (although the

Judge also emphasized that Scarborough "ha[d] not given [him] enough confidence [at]

present that she will establish that the fair-market value is $13,000").

Notwithstanding these favorable assumptions, the Bankruptcy Court found two

---

[12] Scarborough also seizes upon our use of "$13,000" and "$26,500" as being somehow determinative of a range of values for her property. See Br. of Appellant 25 ("[T]he 2006 Decision does state that the range of valuation testimony presented at the trial of the 2002 Proceeding was between $13,000 and $26,500. . . . Putting these statements of the USCA in the 2006 Decision together, it seems clear that the mandate . . . is that the [bankruptcy court] should first determine where in the range between $13,000 and $26,500 the value of the Premises falls.") (citing Scarborough v. Chase Manhattan Mortg. Corp. (In re Scarborough), 461 F.3d at 409). Our summary of the information presented below cannot be read as binding the fact-finder on remand. Cf. Kool, Mann, Coffee & Co. v. Coffey, 300 F.3d 340, 354 (3d Cir. 2002) (distinguishing dicta from mandate).

main impediments to confirming the plan: 1) the limitations imposed by the five-year term of 11 U.S.C. § 1322(d) (2002),[13] considered in tandem with 2) the Court's doubts as to whether Scarborough would "be able to make all payments under the plan and . . . comply with the plan," 11 U.S.C. § 1325(a)(6) (2002). We find Scarborough's legal arguments regarding the starting and tolling of the five-year term to be unconvincing; we agree with the wealth of authorities cited by the Trustee and relied upon by the District and Bankruptcy Courts that the five-year period cannot have been tolled throughout the duration of the bankruptcy action, to commence only upon plan confirmation. Nor do we detect any clear error in the Bankruptcy Court's fact-finding, especially with regard to Scarborough's ultimate ability to pay her obligations under the plan. See In re Exide Techs., 607 F.3d 957, 962 (3d Cir. 2010) (review of mixed questions of law and fact involves "affording a clearly erroneous standard to integral facts, but exercising plenary review of the lower court's interpretation and application of those facts to legal precepts" (quoting In re CellNet Data Sys., Inc., 327 F.3d 242, 244 (3d Cir. 2003))). We also cannot fault the Bankruptcy Court for failing to hold a bifurcation hearing when its outcome could not have affected the resolution of Scarborough's Chapter 13 filing. In sum, the Bankruptcy Court's decision is both legally and factually sound, and the District Court did not err in upholding it.

III.

Therefore, for the reasons expressed at length above, we will affirm the orders of

---

[13] Since this case began in 2001, the older statutory provision applies.

the District Court.[14]

---

[14] Scarborough does not attack the District Court's resolution of her Fed. R. Civ. P. 59/60 motion. Accordingly, the matter is waived. <u>Eurofins Pharma US Holdings v. BioAlliance Pharma SA</u>, 623 F.3d 147, 161 n.15 (3d Cir. 2010).

The parties have filed several additional motions relating to briefing requirements and amendments to the record. We dispose of them as follows. Scarborough's motions to file a reply brief out of time, to submit an over-length brief, to file a supplemental appendix, and to amend the statement of issues on appeal—motions opposed by the appellees—are denied. We granted a lengthy extension of time to file a reply brief, but Scarborough missed the new deadline without notifying this Court. The reply brief she eventually submitted did not comply with Fed. R. App. P. 32(a)(7)(A)—indeed, the reply brief was longer than the two principal briefs combined. It also contained numerous arguments and averments that were never raised below and appear to be novel to this appeal, and we would therefore be unable to consider much of it—e.g., claims pertaining to alleged violations of bankruptcy rules. "As a general matter, the courts of appeals will not consider arguments raised on appeal for the first time in a reply brief." <u>Hoxworth v. Blinder, Robinson & Co.</u>, 903 F.2d 186, 204 n.29 (3d Cir. 1990). As we understand Chase's submissions to pertain to its preclusion arguments, and as we have decided in its favor on alternative grounds, Chase's motions to amend the supplemental appendix and to amend the statement of facts are denied as unnecessary.