NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

---

No. 16-1679

---

In re: ULTIMATE ESCAPES HOLDINGS LLC, et al,
Debtors

EDWARD T. GAVIN, Trustee of the UE Liquidating Trust,
On behalf of the Estates of Ultimate Escapes Holdings LLC, et al.,
Appellants

v.

JAMES M. TOUSIGNANT; RICHARD KEITH

---

Appeal from the United States District Court
for the District of Delaware
(D.C. Civil Action No. 1-15-cv-00241)
District Judge: Honorable Richard G. Andrews

---

Submitted Under Third Circuit LAR 34.1(a)
January 18, 2017

Before: AMBRO, VANASKIE, and SCIRICA, Circuit Judges

(Opinion filed: March 17, 2017)

OPINION[*]

AMBRO, Circuit Judge

Edward T. Gavin, the Trustee of a Chapter 11 liquidating trust, appeals the judgment—following a three-day bench trial—of a breach-of-fiduciary-duty lawsuit in favor of two inside directors of an insolvent company that set up memberships relating to high-end vacation residences and related services. The alleged breach of fiduciary duty stems from a deal an inside director negotiated at the eleventh hour to cover a cash shortfall. The deal, which was intended to transfer, among other things, only a limited number of members to the bankrupt company's direct competitor, provided the basis for that competitor later to solicit all of the company's members. Gavin alleges this deal transferred the company's most valuable asset worth up to $40 million for the paltry sum of $115,000.

Gavin's appeal raises factual issues masquerading as legal challenges. Because we review factual findings for clear error, of which there are none, we affirm.

**I. Background**

Ultimate Escapes Holdings, LLC, and affiliates signed up approximately 1,250 members for its services. Ultimate Escapes (sometimes referred to simply as "UE") maintained a proprietary database for its information, which the company's public filings

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

valued at over $14.5 million. The membership information served as collateral for a revolving loan by its primary lender, CapSource. The loan was also personally guaranteed by Appellees James M. Tousignant and Richard Keith, the company's inside directors. Ultimate Escapes ran into significant financial difficulties and began confidential merger discussions with its direct competitor, Club Holdings, LLC, whose primary lender was also CapSource. Ultimate Escapes' Board, which included Tousignant, Keith, and three outside directors, viewed a merger with Club Holdings as the best option because CapSource would need to approve the newly formed company's restructured debt. The Board authorized Tousignant and Keith to take action as reasonably necessary to effect the merger.

While the merger discussions continued with Club Holdings, Ultimate Escapes continued to face financial problems. To cover cash shortfalls, Keith contributed $100,000 for mortgage payments and Tousignant contributed $50,000 for interest payments. The financial difficulties continued, however, and in late July 2010 the Board discovered that Ultimate Escapes had insufficient cash to meet payroll and other urgent obligations due Friday, August 6. Tousignant approached CapSource for funding, but it refused. Tousignant then asked Club Holdings for funding. It agreed to purchase one of Ultimate Escapes' properties, but due to unanticipated closing costs Ultimate Escapes still needed $115,000.

To cover this unexpected shortfall, Tousignant negotiated with Club Holdings an agreement that forms the basis of this case. The latter provided the $115,000. In exchange, Ultimate Escapes agreed to use its best efforts to transfer three properties and

30 members to Club Holdings. In the membership-transfer paragraph, the Agreement also lifted confidentiality restrictions that would be inconsistent with the membership transfers. J.A. 9 ("UE hereby knowingly and voluntarily waives any [confidentiality] restrictions . . . that may be construed as limiting or inconsistent with the rights of CH under this Section. . . . UE shall in no way or manner hold CH liable for any actions with respect to the direct solicitation of its members as set forth herein."). At 8:30 a.m. on Monday, August 9, Tousignant made a phone call to CapSource as a final attempt to secure funding. When it refused, Tousignant signed the Agreement with Club Holdings on behalf of Ultimate Escapes. It received the $115,000 and was able to pay its employees and cover other urgent expenses that afternoon.

Later that month, Ultimate Escapes started to doubt whether the merger would happen, so it began seeking bidders for its assets. In September, its bidding agent accidently sent Club Holdings an email that discussed potential bidders. Alerted that Ultimate Escapes was pursuing alternatives to a merger, Club Holdings began mass-soliciting Ultimate Escapes' members. Ultimate Escapes sent a cease-and-desist letter, but Club Holdings responded that the Agreement permitted solicitation.

Ultimate Escapes then filed for Chapter 11 bankruptcy and sought to reject the Agreement as an executory contract[1] and requested a temporary restraining order

[1] "An executory contract is a contract under which the obligation[s] of both the bankrupt and the other party to the contract are so far underperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other." *In re Exide Techs.*, 607 F.3d 957, 962 (3d Cir. 2010), *as amended* (June 24, 2010) (citation and quotation marks omitted). A debtor may, with the court's permission, reject an executory contract in bankruptcy. 11 U.S.C. § 365.

enjoining solicitation of its non-transferred members by Club Holdings. The Bankruptcy Court allowed the company to reject the executory contract but denied the TRO, as it concluded that the Agreement likely permitted Club Holdings to solicit Ultimate Escapes' members. The confirmed liquidation plan transferred all assets into a liquidating trust and Gavin was appointed Trustee. He then brought suit against Tousignant and Keith for breaching their fiduciary duties to Ultimate Escapes in executing the Agreement on its behalf.

Following a three-day bench trial, the Bankruptcy Court filed its Proposed Findings of Fact and Conclusions of Law in recommending that the District Court enter judgment in favor of Tousignant and Keith. Gavin filed objections, and the District Court, after conducting a fresh review of the record, overruled the objections. This appeal followed.

**II. Jurisdiction and Standard of Review**

The Bankruptcy Court and District Court had jurisdiction under 28 U.S.C. §§ 157 and 1334, and we have jurisdiction under 28 U.S.C. §§ 158 and 1291. We review the District Court's legal conclusions without any presumption of correctness and its factual findings for clear error. *See Copelin v. Spirco, Inc.*, 182 F.3d 174, 180 (3d Cir. 1999) (citing 28 U.S.C. § 157).

**III. Analysis**

Gavin primarily argues that entire fairness instead of business judgment review should apply because Tousignant and Keith were either interested parties with conflicts or grossly negligent. The flaw underlying all Gavin's arguments is his use of hindsight.

He would have us analyze the fiduciary breach because of an after-the-fact result: that over a month after the Agreement's execution Club Holdings was tipped off that the merger no longer might go through, decided to mass-solicit customers, and relied on opaque language in the Agreement to justify doing so. Regardless of the eventual outcome, we judge a fiduciary's actions based on what he reasonably knew at the time he acted. *See, e.g.*, *Chen v. Howard-Anderson*, 87 A.3d 648, 665 (Del. Ch. 2014) ("Fiduciary decisions are not judged by hindsight. The defendants' actions must stand or fall based on what they knew and did at the time.").

**A. Business Judgment Rule or Entire Fairness**

The business judgment rule is Delaware's default standard of review for a business decision. It presumes that the directors "acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Trados Inc. S'holder Litig.*, 73 A.3d 17, 43 (Del. Ch. 2013) (quotation marks and citations omitted). A director's decision is upheld if it has any rational basis. *Id.* However, if a director breaches a fiduciary duty to the entity, such as the duty of loyalty or of care, the court applies the entire fairness standard. *See id.* at 44. Under this standard, the director must prove "that the transaction was the product of both fair dealing *and* fair price." *Id.* (emphasis in original) (quotation marks and citation omitted).[2]

[2] In the alternative, Gavin argues that an intermediate level of review, enhanced scrutiny, should apply. As the Bankruptcy and District Courts correctly ruled, however, enhanced scrutiny does not apply because the Agreement did not cause a change in control and was not a merger agreement, or any other specific, recurring, and readily identifiable situation

The Bankruptcy Court and District Court ruled that Gavin failed to carry his evidentiary burden to rebut the presumption that the business judgment rule applied. *See In re Walt Disney Co. Derivative Litig.*, 907 A.2d 693, 747 (Del. Ch. 2005), *aff'd*, 906 A.2d 27 (Del. 2006). Gavin argues that either the conflict of Tousignant and Keith or their gross negligence calls for entire fairness review.

**1. Interestedness**

Gavin asserts that, "because he alleged interestedness, the trial court was first required to examine whether Appellees Tousignant and Keith stood to gain a material potential benefit or avoid a potential detriment from the challenged transaction . . ." App. Repl. Br. 9. This misstates Delaware law. *See Trados Inc.*, 73 A.3d at 51–52 ("At the pleadings stage, Chancellor Chandler recognized that it was reasonably conceivable that the VC directors faced a conflict of interest. . . . At trial, the plaintiff had the burden to prove on the facts of this case, by a preponderance of evidence, that [they were interested].") (citation omitted). At any rate, the Bankruptcy and District Courts found that Tousignant and Keith were not interested despite Gavin's characterization that "the District Court short-circuited the analysis and effectively assumed [they] were disinterested and independent." App. Repl. Br. 9-10.

---

in which Delaware law requires enhanced scrutiny. *See Reis v. Hazelett Strip-Casting Corp.*, 28 A.3d 442, 457 (Del. Ch. 2011). Although one of the Agreement's purposes was to keep the company in business to facilitate a later merger, it was not a merger agreement and contemplated no change in control. It was also not a sale of the company, as it only intended to transfer 30 members.

In addition, Gavin mischaracterizes the Bankruptcy and District Courts' decisions as failing to take into account whether Tousignant and Keith were *materially* interested in the Agreement. Delaware law requires that "the benefit received by the director and not shared with stockholders must be 'of a sufficiently material importance, in the context of the director's economic circumstances, as to have made it improbable that the director could perform her fiduciary duties . . . without being influenced by her overriding personal interest.'" *Trados*, 73 A.3d at 45 (alteration in original) (citations omitted). The Bankruptcy and District Courts found that Tousignant and Keith were not materially interested in the Agreement. We agree: they gained no personal benefit from the transfer of the 30 membership interests nor from the provision on which Club Holdings eventually relied to justify mass solicitation of Ultimate Escapes' clients.

Gavin nonetheless contends that Tousignant and Keith were materially interested because the Agreement would allow Ultimate Escapes to meet payroll and stay in business, thus increasing chances of a future merger with Club Holdings. And if the merger went through, Tousignant and Keith would have a better chance of 1) being repaid their cash advances and relieved of personal guarantees, 2) remaining in similar positions and commensurate salary at the new company, and 3) avoiding civil and criminal liability for missing the August 6 payroll.

We see no clear error in the finding that these alleged benefits—including an increased chance of a merger with Club Holdings that might advantage Tousignant and Keith more than other stakeholders—did not have a material influence on the decision to enter the Agreement. The record shows that Keith was not involved in it; at most, he had

general knowledge of the Agreement but did not know of the specific provision that allowed solicitation of Ultimate Escapes' members. As to Tousignant (who negotiated the Agreement), the Board still thought a merger with Club Holdings was the best option, and Tousignant's actions were entirely consistent with the Board's planned course of action. Tousignant also credibly testified that he entered this Agreement to protect Ultimate Escapes. If the company missed payroll, it would have to make a damaging disclosure in securities filings, all officers and directors could face civil or criminal liability, and it might have been forced to enter bankruptcy and cease operations. Hence, given the potential harm that could befall Ultimate Escapes if it did not cover the cash shortfall, we do not see sufficient evidence that an increased chance of merger-specific benefits overrode Tousignant's actions on the eve of a funding deadline.

**2. Gross Negligence**

Gavin next argues that entire fairness review applies because Tousignant and Keith were grossly negligent. *See In re Walt Disney Co. Derivative Litig.,* 906 A.2d 27, 64 (Del. 2006). As the Courts here correctly found, they were not grossly negligent because Tousignant, who took the lead in negotiating the Agreement, worked diligently on a constrained deadline to cover the cash shortfall. He was in constant communication with Keith and the rest of the Board throughout the weekend and was also steadily working throughout that time on closing the sale of a property to shore up the funding gap. He shared the Agreement with Ultimate Escapes' general counsel. He also made one last request for funding from the company's primary lender, and only after being rejected acquiesced to the Agreement.

Most importantly, Tousignant understood the Agreement to transfer 30 members only, and we agree with the District Court that only a "keen legal eye . . . [could] have recognized the poorly drafted language that [Club Holdings] relied upon as a basis for its mass solicitation." J.A. 41. Thus the record does not support the conclusion that any of Tousignant, Keith, or the Board, working under a tight deadline, was grossly negligent.

Because the business judgment rule applies, all Tousignant and Keith needed to show was that the transaction had a rational business purpose. *Trados*, 73 A.3d at 43. This requirement is easily met here: the transaction infused Ultimate Escapes with necessary cash to keep it afloat.

**B. Waste**

Finally, Gavin contends the Agreement constituted "waste." *See Walt Disney Co.*, 907 A.2d at 748–49 ("Corporate waste is very rarely found in Delaware courts because the applicable test imposes such an onerous burden upon a plaintiff—proving 'an exchange that is so one sided that no business person of ordinary, sound judgment could conclude that the corporation has received adequate consideration.'") (citation omitted). We agree that the Agreement does not qualify as wasteful. It was intended to transfer 30 members to support the additional transfer of three properties to Club Holdings, thus following the industry custom of 10 members per home. Club Holdings did not start its mass solicitation until over a month after the Agreement was executed, and not until it discovered Ultimate Escapes was no longer wedded to the planned merger.[3] While

[3] Gavin also contends that the Bankruptcy Court was inconsistent because, in its early ruling on Ultimate Escapes' requested TRO to enjoin solicitation, it ruled that the

perhaps Ultimate Escapes could have found a better source of funding—especially if it were not pressed against a tight deadline—we cannot conclude on this record that the Agreement amounted to waste.

*        *        *        *        *

We thus affirm.

---

Agreement likely allowed the solicitation of members. At that stage, however, the Court was working off an abbreviated record and evaluating factors for preliminary relief. Here it conducted a three-day bench trial that included what Tousignant knew or reasonably could have known at the time he entered the transaction.