**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

MORGAN T. ZURN
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

May 29, 2024

Aaron P. Sayers, Esquire
McDermott Will & Emery LLP
1000 N. West Street, Suite 1400
Wilmington, DE 19801

Gary W. Lipkin, Esquire
Saul Ewing LLP
1201 N. Market Street, Suite 2300
Wilmington, DE 19801

RE: *Cleveland Integrity Services, LLC v. Randy Byers*,
Civil Action No. 2024-0371-MTZ;
*Cleveland Integrity Services, LLC v. Michael Frye*,
Civil Action No. 2024-0372-MTZ; and
*Eagle Infrastructure Super HoldCo, LLC v. Bradley Harmon*,
Civil Action No. 2024-0374-MTZ

Dear Counsel:

As you are aware, plaintiff Cleveland Integrity Services, LLC ("CIS") seeks to enforce restrictive covenants in a December 17, 2013, stock purchase agreement ("SPA") against defendants Randy Byers and Michael Frye (the "SPA Defendants"). The case is presently at the pleading stage, with CIS seeking a temporary restraining order. The SPA Defendants are also each subject to an Employment Agreement ("EA"). In considering the plaintiffs' motions to expedite and for a temporary restraining order, the Court held that the SPA is to be read together with each EA, as one agreement.[1]

---

[1] 2024-0372-MTZ, Docket Item ("D.I.") 22; 2024-0371-MTZ, D.I. 21.

CIS contends it purchased the right to enforce the SPA when it purchased Cleveland Integrity Services, Inc.'s assets out of bankruptcy via an Asset Purchase Agreement ("APA"). Indeed, Section 2.1(q) of the APA states it includes "[a]ll rights under non-disclosure or confidentiality, non-compete or non-solicitation agreements with employees and agents of any Seller."[2] Because the EAs are an executory contract, CIS was required to, and did, explicitly assume the EAs under Section 365 of the Bankruptcy Code.[3]

The parties dispute whether the SPA must also have been explicitly assumed under Section 365, or whether CIS purchased the right to enforce the SPA under Section 363[4] via the APA and the Bankruptcy Court's sale order.[5] The parties submitted supplemental briefing on this issue on May 1 and 2.[6] The plaintiffs maintain the sale order effectuated the sale of the right to enforce the SPA's restrictive covenants, as the SPA was not an executory contract. The SPA Defendants point out that the District of Delaware has held that where multiple

---

[2] 2024-0372-MTZ, D.I. 1 Ex. C, Ex. 3, Asset Purchase Agreement § 2.1(q); 2024-0371-MTZ, D.I. 1, Ex. C, Ex. 3, Asset Purchase Agreement § 2.1(q).

[3] 11 U.S.C. § 365(a).

[4] 11 U.S.C. § 363(f).

[5] 2024-0372-MTZ, D.I. 1, Ex. C; 2024-0371-MTZ, D.I. 1, Ex. C.

[6] 2024-0372-MTZ, D.I. 23, D.I. 24; 2024-0371-MTZ, D.I. 22, D.I. 23.

contracts make up one agreement, a Section 365 assumption must carry the benefits and burdens of all of those contracts.[7] The SPA Defendants conclude the plaintiffs must therefore show CIS expressly assumed the SPA, which it did not do.

I agree with the SPA Defendants that because the EA and the SPA are part of the same agreement, CIS could not assume the EA while rejecting the SPA.[8] But CIS is not contending it rejected the SPA; CIS contends it purchased the SPA under Section 363. The dispositive question is therefore whether CIS also had to expressly assume the SPA under Section 365.

The parties did not answer that question. I am left with CIS's argument that it purchased the right to enforce the restrictive covenants under Section 363 on the one hand, and nothing from the SPA Defendants saying that is improper on the other.[9] The SPA Defendants have not demonstrated that all contracts comprising a

---

[7] *In re Physiotherapy Hldgs., Inc.*, 538 B.R. 225, 233, 237 (D. Del. 2015).

[8] *Id.*; 2C Bankr. Serv. L. Ed. § 21:186 (collecting authorities).

[9] The SPA Defendants' citation of *In re Exide Technologies* goes to the proposition that a buyer cannot accept some portions of a suite of agreements and reject others. 340 B.R. 222, 228 (Bankr. D. Del. 2006), *vacated and remanded on other grounds*, 607 F.3d 957 (3d Cir. 2010). I do not read that case to say that one executory contract in a multi-contract agreement makes all the rest of the contracts executory. Nor am I convinced by the SPA Defendants' single-sentence footnote citing *Exide* for the proposition that the SPA was "arguably executory." 2024-0372-MTZ, D.I. 23 at 2 n.1; 2024-0371-MTZ, D.I. 22 at 2 n.1. The Third Circuit's definition of an executory contract is one in which "the obligation of both the bankrupt and the other party to the contract are so far underperformed that the

multi-contract agreement must be handled under either Section 365 or Section 363. Nor have they demonstrated that if one contract comprising a multi-contract agreement is executory, that the entire agreement is executory. And the SPA Defendants cannot assert in this Court that the Bankruptcy Court erred in permitting CIS to purchase the SPA rights under Section 363. At least at the pleading stage, I conclude CIS purchased the right to enforce the SPA restrictive covenants under Section 363. It follows that CIS has standing to enforce the SPA's restrictive covenants against Frye and Byers.

As triaged at oral argument on the plaintiffs' request for a TRO, that conclusion leaves only one impediment to entry of a TRO: a bond under Court of Chancery Rule 65.[10] I have not yet heard from the plaintiffs on the magnitude of a bond. I ask the parties to confer; a TRO will only issue once a bond is on file.

The parties' May letters also identified other loose ends for the Court to resolve. Frye contends he has found other agreements without any

---

failure of either to complete performance would constitute a material breach excusing the performance of the other." *In re Exide Techs.*, 607 F.3d 957, 962 (3d Cir. 2010) (internal quotation marks omitted). The SPA closed years ago; the SPA Defendants' invocation of ongoing indemnification obligations falls short of showing it is executory.

[10] Ct. Ch. R. 65(c).

post-termination restrictive covenants that "have no relationship" to the 2013 SPA.[11] If Frye contends these documents superseded or somehow nullified the restrictive covenants in the SPA, at this juncture, he must file a motion to vacate the TRO. I take no action on them now.

As for the plaintiffs, they ask the Court to consider plaintiff Eagle Infrastructure Super HoldCo's motion for a temporary restraining order enforcing defendant Bradley Harmon's customer nonsolicit covenant. I agree with Eagle that this covenant is enforceable under Delaware and Oklahoma law.[12] And Harmon's argument that the covenant is not supported by consideration must be rejected.[13]

In conclusion, a TRO against the SPA Defendants should issue based on the SPA's restrictive covenants once a bond is on file, and a TRO against Harmon should issue based on the terms of the customer nonsolicit. The parties should supply a stipulated proposed order.

Sincerely,

*/s/ Morgan T. Zurn*

Vice Chancellor

---

[11] 2024-0372-MTZ, D.I. 23 at 5.
[12] 2024-0374-MTZ, D.I. 24 at 5–6.
[13] *See Newell Rubbermaid Inc. v. Storm*, 2014 WL 1266827, at *9 (Del. Ch. Mar. 27, 2014).

MTZ/ms

cc: All Counsel of Record, via *File & ServeXpress*